# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| SOUTHEASTERN LEGAL FOUNDATION,<br><br>*Plaintiff*,<br>v.<br><br>THE NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,<br><br>*Defendant*. | Case No. 23-cv-3819 |

**DECLARATION OF ELIZABETH FIDLER**

I, Elizabeth Fidler, under 28 U.S.C. § 1746, hereby declare and state as follows:

1. I currently serve as the Acting Director of the Archival Operations Division (the "Division" or the "Archival Operations Division") of the Legislative Archives, Presidential Libraries, and Museum Services branch of the National Archives and Records Administration (NARA). I have been employed by NARA for 30 years. From 1997 to 2020, I worked with the Presidential Materials Division (the predecessor to the Archival Operations Division), serving my last 19 years in that unit as a senior policy archivist. I have worked with Presidential and Vice Presidential records for 23 years of my NARA career. I hold a bachelor's degree in history from the University of Maryland at Baltimore County.

2. I am responsible for administering access requests for Presidential and Vice Presidential records that have been transferred into NARA's custody in accordance with the Presidential Records Act (PRA) of 1978, as amended, 44 U.S.C. §§ 2201-2209. My office has specific responsibility for Vice Presidential records from the Clinton, George W. Bush, Obama, and

Trump administrations, as well as selected classified Presidential record collections from the Reagan through Obama administrations.

3. The statements contained in this declaration are based upon my personal knowledge, upon information furnished to me in the course of my official duties, and upon conclusions and determinations reached and made in accordance therewith.

**The Presidential Records Act**

4. The PRA establishes public ownership of all Presidential records and requires that such records be transferred into NARA's custody and control when a President leaves office. 44 U.S.C. § 2203(g).

5. Sections 2208 and 2207 of the PRA require that NARA provide former and incumbent Presidents and Vice Presidents notice and an opportunity to assert constitutionally based privilege claims before NARA releases Presidential records to the public. *Id.* §§ 2208, 2207. Specifically, Section 2208 states that before the Archivist may release Presidential records to the public, the Archivist must first notify the incumbent President and the President who was in office when the records were created. *Id.* § 2208(a)(1)(A). Whenever the Archivist intends to release Vice Presidential records, the Archivist must also notify the Vice President who was in office at the time the records were created. *See id.* § 2207 (extending the notice requirements to Vice Presidential records).

6. The Archivist must then provide a period of 60 working days for the incumbent President, former President, and, if applicable, former Vice President, to assert any claim of constitutionally-based privilege against disclosure. *Id.* § 2208(a)(3)(A). The former or incumbent President may choose to extend this period once, for an additional 30 working

days, "by filing with the Archivist a statement that such an extension is necessary to allow an adequate review of the record." *Id.* § 2208(a)(3)(B).

**Plaintiff's Freedom of Information Act (FOIA) Request**

7. On June 9, 2022, the Archival Operations Division received a FOIA request from Southeastern Legal Foundation (SLF) seeking "all emails President Joe Biden preserved through the National Archives and Records Administration from his time as vice president for the following email addresses: robinware456@gmail.com, JRBWare@gmail.com and Robert.L.Peters@pci.gov." The request also seeks "any correspondence between Joe Biden and/or his legal or government representatives concerning the use of these emails and preservation of records from them from Jan. 1, 2009 through present."

8. The Archival Operations Division acknowledged the request and assigned it tracking number 2022-0113-F.

9. SLF argued that the request was entitled to expedited processing for the following reasons:

> We also request that this FOIA be expedited under the law's compelling need provisions. As a journalist, Mr. Solomon has been primarily engaged in disseminating information about the Russia collusion, Hunter Biden and Ukraine investigations conducted by the FBI, CIA and Congress and these documents provide compelling and urgent materials that will inform the public concerning actual or alleged federal government activity and possible wrongdoing. Additionally, Southeastern Legal Foundation has been seeking related records for years from the State Department. Given the State Department's continued delay and the public importance of this information, State Department should expedite this request.

10. The Division found that this argument failed to demonstrate that expedition was warranted under NARA's FOIA regulations, for two reasons. First, the argument about why the State Department should expedite this request was irrelevant, because NARA is not the State Department, and the State Department's processing history has no relation to this request. Second, the request did not provide any evidence or information to support its conclusory

3

assertion that "these documents provide compelling and urgent materials that will inform the public concerning actual or alleged federal government activity and possible wrongdoing."

**NARA's Processing of Plaintiff's FOIA Request**

11. NARA conducted a search for documents potentially responsive to Plaintiff's FOIA request, which yielded more than 5,000 hits. NARA has been processing those documents at a rate of roughly 500 pages per month.

12. On October 31, 2023, after processing an initial tranche of documents, NARA made its first PRA notification. NARA processed another tranche of documents in November and made its second PRA notification on November 30, 2023.

13. Plaintiff then agreed to narrow its request by applying a list of keywords. NARA conducted another search for potentially responsive documents, which yielded approximately 3,000 possible hits.

14. Based on a sampling of approximately half of those emails, NARA estimates that there are roughly six pages per email,[1] for an estimated total of 18,000 potentially responsive pages.

15. After Plaintiff narrowed its request, NARA began processing responsive documents at a rate of approximately 600 pages per month.

16. NARA will make each subsequent PRA notification for the next batch of records no later than the last day of each month thereafter, unless that date falls on a weekend or holiday, in which case the PRA notification will occur on the next working day. Pursuant to the PRA, NARA will produce any responsive, non-exempt records to SLF either 70 working days or

---

[1] Based on a very limited subset of documents potentially responsive to Plaintiff's original request, NARA initially estimated that there were approximately 16 pages per email. After SLF narrowed its request, NARA devised an updated estimate of pages per email using the narrowed pool of records. NARA considers the 6-pages-per-email estimate to be a much more reliable approximation than the previous estimate, because it is based on a larger set of sampled documents.

100 working days (if the former or incumbent President invokes the 30 working-day extension) after each notification. If the end of the 70- to 100-working-day period falls on a weekend or a holiday, NARA will produce the records the next working day.

**Archival Operations Division Processing Capacity and Workload**

17. The Archival Operations Division handles all FOIA and access requests for four Vice Presidential collections, including that of former Vice President Joseph Biden. In addition to those responsibilities, the Archival Operations Division is responsible for the classified electronic records of former Presidents George W. Bush and Barack Obama, and other select series dating back to former President Ronald Reagan.

18. The Division currently has only three archivists available for processing records in response to FOIA and other access requests. Due to competing work obligations, the archivists can spend no more than 70 percent of their work time responding to access requests. Collectively, the three archivists are capable of processing 3,100 pages of records each month.

19. This overall processing capacity is currently divided among the Division's current backlog of FOIA and other access requests, four monthly litigation processing schedules, two document requests from the House Oversight Committee, and a Special Counsel subpoena seeking a large volume of records.

20. To date, in 2023, the Archival Operations Division has received eight subpoenas and three requests for documents from Congress. Over the next year, as the presidential election approaches, we anticipate that we will receive at least as many access requests as we did last year. The number of requests does not necessarily equate to the amount of work hours to process. A single request could have multiple parts and a very expansive scope. These subpoenas, Congressional document requests, and FOIAs reflect an increasing and

unprecedented interest in the Division's Vice Presidential records collections, and exceptional and unusual circumstances which the Division could not have anticipated.

21. As these lawsuits progress and more records are reviewed, the Division is contending with an ever-increasing administrative burden. The overlap across the records responsive to these requests is requiring detailed and painstaking notes to facilitate the notification process (as the legal representatives of the former and incumbent Presidents and Vice Presidents are notified of NARA's proposed openings).

22. The Division currently has 126 pending FOIA requests for approximately 313,528 textual pages, 396,103 email messages and electronic files (estimated at 3.7 million equivalent pages), and 38,581 photographs and audiovisual tapes from Vice Presidential records in its legal custody, for a total backlog of 748,212 files. In addition to this workload, the Division is also handling a backlog of mandatory declassification requests and FOIA requests for classified Presidential records in its physical custody.

23. If the Division receives access requests at the same rate that it did in fiscal year 2023, I anticipate that we will receive another 40 FOIA and access requests in fiscal year 2024.

24. Considering the Division's backlog, staffing capacity, resource constraints, and workload, the Archival Operations Division can process no more than 100 emails, or 600 pages, per month for Plaintiff's FOIA request. This is more than double NARA's standard processing rate, which is 250 pages per month.

25. Processing Plaintiff's request at a rate exceeding 600 pages (which is the equivalent of 100 electronic files) per month would have a significant adverse impact on the Archival Operations Division and on other requestors, many of whose requests were filed long before Plaintiff's. The Division would be unable to address its oldest pending FOIA requests

received in 2016 and 2017, to meet timeliness standards for responding to written requests from the public, and to fully engage in agency-wide initiatives and priorities.

26. The Division is not capable of providing a rolling *Vaughn* index each month at the same time that it processes responsive records at a rate of 600 pages, or 100 emails, per month. The Division's archivists are the only NARA staff members with the knowledge and expertise needed to produce *Vaughn* indices for the responsive records. Additionally, requiring the Division to produce piecemeal *Vaughn* indices would necessarily divert time and resources away from processing Plaintiff's request (and other FOIA requests).

27. With every document production, the Archival Operations Division also produces a "withdrawal sheet" that corresponds to every redaction or non-disclosed document. The withdrawal sheet generally provides basic metadata and a brief description of the document and reason for non-disclosure. A withdrawal sheet is less descriptive than a *Vaughn* index, but it may provide the Plaintiff with some additional information about the documents and basis for withholdings.

**Alternative Approaches**

28. The Archival Operations Division has communicated to Plaintiff that it is willing to work with Plaintiff to explore alternative approaches to addressing Plaintiff's concerns about the volume of potentially responsive records. First, NARA has invited Plaintiff to engage in discussions about narrowing the scope of its requests so that they are more targeted to the information Plaintiff is seeking. Second, NARA has invited Plaintiff to prioritize its requests, so that the Division can first process the information that is most important to Plaintiff. More specifically, Plaintiff could mirror the approach used in *Blumenthal v. NARA*, in which the

plaintiffs identified tiers of information and NARA processed those tranches in the order requested by the plaintiffs.[2]

29. As explained above, Plaintiff has agreed to narrow its request by applying search terms. Plaintiff has not responded to NARA's offer to discuss processing priorities.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 8th day of December, 2023

_____
ELIZABETH FIDLER

---

[2] Nat'l Archives and Records Admin., *2018-0263-F: Emails Processed in Response to Blumenthal v. NARA FOIA Litigation*, https://www.georgewbushlibrary.gov/research/finding-aids/foia-requests/2018-0263-f-emails-processed-response-blumenthal-v-nara-foia-litigation.