IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SOUTHEASTERN LEGAL FOUNDATION, INC., | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION |
| v. | ) ) | FILE NO. 1:23-cv-03819-LLM |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, | ) ) ) | |
| Defendant. | ) ) | |

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS JOINT STATUS REPORT POSITION

As directed in the Court's December 14, 2023, Order (Doc. No. 13), Plaintiff Southeastern Legal Foundation (SLF) submits this brief in support of its position on (1) whether the Court should order Defendant National Archives and Records Administration (NARA) to increase its rate of processing responsive documents and (2) whether the Court should order interim *Vaughn* indexes.

## INTRODUCTION

The Freedom of Information Act (FOIA) "seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands." *EPA v. Mink*, 410 U.S. 73, 80 (1973). SLF first filed the

FOIA request in question on June 9, 2022, seeking emails of then-Vice President Biden in three pseudonymous accounts: robinware456@gmail.com, JRBWare@gmail.com, and Robert.L.Peters@pci.gov (the Request). The records were of great interest then, and even though interest has only grown since, *see infra* n.3, NARA has yet to produce a single document.

At issue here is NARA's now nineteen-month delay in reviewing and producing 18,000 pages of government records—emails and other documents—sent by (or to) then-Vice President Joseph Biden in various email accounts that did not bear his name or using official channels. NARA now demands at least an additional 2.5 *years* to process the responsive documents—resulting in a total of more than *four years* from the date of the Request (Doc. 12 at 20)—despite SLF having agreed to substantially limit its request through narrowing search terms.[1] Having already delayed production nineteen months, NARA now seeks to process a mere 600 pages per month (PPM). At that rate, NARA will not finish processing until well into the next president's term, further robbing the records of their value to the public to inform a timely debate. NARA further seeks to delay justifying any withholdings until it files for summary judgment in 2026, at the earliest. (Doc. 12 at 22.)

---

[1] This 2.5-year estimate is optimistic. NARA is careful to stress that its estimate is for *processing* the documents, not producing them. (Doc. 12 at 20.)

NARA's proposal would render FOIA's guarantee of prompt availability a dead letter. Indeed, it would frustrate the essential purpose of the statute—to pry from "unwilling official hands" potentially scandalous records for *timely* review by the American public. SLF asked NARA for the documents on June 9, 2022. As of January 9, 2024, SLF has not received a single document. NARA proposes to provide everything to SLF sometime around October 2026 and only then to notify SLF if it has withheld documents.

This is unreasonable. This Court should order a processing rate of at least 1,000 PPM, along with interim *Vaughn* indexes to remedy NARA's failure to promptly disclose documents and to prevent further unwarranted delay.

## BACKGROUND

SLF's Request made its request on June 9, 2022. (Doc. 1-1.) After confirming that it possessed 5,138 responsive emails, 25 electronic files, and 200 pages of other records, NARA informed SLF it was placing the Request in the complex queue. (Doc. 1-4.) When SLF requested an update after nearly six months of silence, NARA responded on December 25, 2022, that there were 28 FOIA requests in the complex queue ahead of SLF's. (Doc. 1-6.) After six more months of silence, SLF requested another update. In response, NARA admitted on June 16, 2023, that there were still 28 requests ahead of SLF's—it had not fully processed even a single request ahead of SLF's. (Doc. 1-8.)

SLF filed its Complaint on August 28, 2023. (Doc. 1.) NARA filed its Answer on September 29, 2023. (Doc. 8.) NARA informed SLF in October 2023 that "it is currently processing" the Request, which it estimated would yield around 82,000 potentially responsive pages. (Doc. 10 at 2.) In discussions between the parties that month, SLF learned that NARA was processing at 500 PPM. (Doc. 12 at 6.) At 500 PPM, processing would take 164 months, or almost fourteen more years, and more than sixteen years total.

Attempting to reach a reasonable settlement, SLF agreed to narrow its Request to only search terms that were most relevant to the American public. (Doc. 12 at 2–6) (listing search terms). Applying those search terms reduced the pool of potentially responsive emails to 3,000 and the average number of pages from sixteen to six—an overall reduction by 78%, to 18,000 pages. (Doc. 12 at 6.) NARA agreed to increase its rate of processing to 600 PPM. (Doc. 12 at 6.) This processing rate would result in completion of processing (not production) roughly thirty months from now (rather than thirty-six months)—or just over four years from SLF's Request. (Doc. 12 at 6–7.) NARA refused to provide *Vaughn* indexes with any but its final production. (Doc. 12 at 8.)

On December 14, 2023, the Court ordered the parties to brief whether the Court "should order Defendant to increase its rate of processing and production of

documents" and whether the Court "should order *Vaughn* Indexes with Defendant's productions." (Doc. 13.) SLF submits this brief in response to the Court's Order.

As of this filing, more than nineteen months have elapsed since the Request. SLF has not received any documents.

## ARGUMENT

## I. The Court should reject NARA's four-year time frame to complete processing because it unreasonably delays the required timely disclosure of documents of public interest.

### A.     FOIA protects the right to public transparency by requiring prompt availability of responsive documents.

FOIA provides that NARA "shall determine within 20 days" of the Request "whether to comply" and "shall immediately notify" the requester of "such determination and the reasons therefor." 5 U.S.C. § 552(a)(6)(A)(i)(I). To qualify as a "determination," NARA must gather and review the documents, determine which it will produce and withhold, and inform the requester of its determination and of the right to appeal. *Citizens for Resp. and Ethics in Wash. v. Fed. Election Comm'n* (*CREW*), 711 F.3d 180, 189 (D.C. Cir. 2013) (Kavanaugh, J.).

Post-determination, NARA "*shall* make the records *promptly available*." 5 U.S.C. § 552(a)(3)(A) (emphasis added). FOIA means what it says. Prompt availability "mean[s] within days or a few weeks of a 'determination,' *not months or years*." *CREW*, 711 F.3d. at 188 (emphasis added). "[U]nreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and

the courts have a duty to prevent these abuses." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988); *Scott v. IRS,* No. 18-81750, 2021 U.S. Dist. LEXIS 128029, at *21–22 (S.D. Fla. July 9, 2021) (same); *see also Fiduccia v. U.S. Dep't of Just.*, 185 F.3d 1035, 1041 (9th Cir. 1999) (explaining that delay "amount[s] as a practical matter in most cases to saying 'regardless of whether you are entitled to the documents, we will not give them to you'"); *Jud. Watch v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 781 (D.C. Cir. 2018) ("[A]n agency's compliance with FOIA depends upon its 'good faith effort and due diligence . . . to comply with all lawful demands [for records] . . . in as short a time as is possible.'" (quoting *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976)).

In a case such as this one—concerning documents important to public debate about an incumbent president standing for re-election in ten months—delay amounts to denial. The purpose of FOIA is "to open agency action to the light of public scrutiny," which "ensure[s] an informed citizenry, vital to the functioning of a democratic society." *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 142 (1989) (quotation marks omitted); *see Open Soc'y Just. Initiative v. CIA*, 399 F. Supp. 3d 161, 167 (S.D.N.Y. 2019) (noting "paramount public importance and urgency" of request when ordering 5,000 PPM). It is "'scant comfort when stale information is of little value yet more costly than fresh information ought to be.'" *Jud. Watch*, 895 F.3d at 778 (quoting *Payne Enters.*, 837 F.2d at 494). "The value of information is

6

partly a function of time." *Fiduccia*, 185 F.3d at 1041. When the requested documents bear on a matter of time-sensitive public importance, "the loss of that 'value' constitutes a cognizable harm." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Just.* (*EPIC II)*, 416 F. Supp. 2d 30, 40 (D.D.C. 2006). "Not only is public awareness a necessity, but so too is *timely* public awareness. For this reason, Congress recognized that delay in complying with FOIA requests is 'tantamount to denial.'" *Id.* (quoting H.R. Rep. No. 93-876, at 6 (1974)).

## B. NARA's four-year processing timetable results in further unreasonable delay.

Slow processing rates—such as the same 500 PPM rate NARA originally proposed here—cause unreasonable delays that violate the intent and purpose of FOIA. *See, e.g.*, *Villanueva v. U.S. Dep't of Just.*, No. 19-23452, 2021 U.S. Dist. LEXIS 237920, at *9 (S.D. Fla. Dec. 3, 2021) (finding 500 PPM over 42 months is "woefully inadequate under the circumstances of the subject action" and ordering 5,125 PPM, completing production in four months); *Seavey v. U.S. Dep't of Just.*, 266 F. Supp. 3d 241, 246 (D.D.C. 2017) (rejecting 500 PPM and holding that "administrative convenience is simply not a valid justification" for delay); *Open Soc'y Just. Initiative*, 399 F. Supp. 3d at 168 ("[T]he term 'practicable' must be read in the context of FOIA's aims to provide timely information on government activities to the public.").

NARA has already violated FOIA—nineteen months without producing a single document is not prompt. In *Washington v. NARA*, the court objected to the lapse of just six months before NARA began producing documents. No. 21-565, 2022 U.S. Dist. LEXIS 48691, at *16 (W.D. Wash. Mar. 18, 2022); *see also ACLU v. Dep't of Def.*, 339 F. Supp. 2d 501, 505 (S.D.N.Y. 2004) ("Nearly one year has passed since the documents were first requested. To permit further delays in disclosure or providing justification for not disclosing would subvert the intent of FOIA."). Here, NARA waited sixteen months—until SLF was forced to sue—before processing *any* documents.[2] And just as in *Washington*, NARA proposes an unreasonably low rate of production to "remedy" already untimely disclosure, compounding the lengthy delay. Unlike NARA's actions in the *Washington* case, 2022 U.S. Dist. LEXIS 48691, at *13, however, here NARA has *not* demonstrated that it has made any effort to bring in additional personnel to help process its stagnant complex queue. *See generally* (Doc. 12-1 at ¶¶ 17–26.)

NARA at first demanded fourteen years, more than three presidential terms, before it would complete processing of the 82,000 pages of presidential records that then-Vice President Biden chose to create using pseudonymous email accounts.

---

[2] NARA does not reveal in its declaration when it first began to process the Request (Doc. 12-1 at ¶ 11) but given that it told SLF that it had not budged any spots in the queue until litigation commenced, *see infra*, it does not appear NARA began in earnest until it was sued.

(Doc. 10 at 2.) SLF reduced NARA's burden nearly 80% by narrowing its request to only the most relevant documents, hoping to get the documents in something resembling a timely fashion. (Doc. 12 at 2–6.) Yet even after SLF made this concession, NARA maintains that it should not have to finish processing responsive documents until at least thirty months from now—four years after SLF's Request. Even then, there will be an additional 70 to 100 working days for PRA review of the last batch processed, (Doc. 12-1 ¶ 16), followed by a subsequent production of the last batch, preparation of a *Vaughn* index for every document produced during the thirty months (under NARA's approach), negotiations between the parties, and then summary judgment briefing, argument, decision, and enforcement, not to mention attorney fees litigation.

At this rate, SLF would be fortunate to have this matter finished within six years of its Request, degrading the documents' value to the public in 2024. Such a delay is unreasonable on its face.

NARA has not moved with promptness. *See Open Soc'y Justice Initiative,* 399 F. Supp. 3d at 169 (noting the four months "before anyone was paying attention to the request"). The Request never moved from its original position 28 spots back in the complex queue. *Compare* (Doc. 1-6) (28 preceding requests on Dec. 5, 2022) *with* (Doc. 1-8) (number unchanged as of June 16, 2023). Despite long-standing capacity issues, NARA had not taken any administrative actions to increase its

processing capacity in the time SLF's Request has been pending. (Doc. 12-1 at ¶¶ 17-18.) By outside indications, NARA only took meaningful action on SLF's Request after SLF filed this lawsuit. Since then, SLF has substantially narrowed the scope of its Request to accommodate NARA's resource shortfalls while still reaching the documents that bear on this important public debate. (Doc. 12 at 2–6.) To date, SLF has not received a single document or a notification that a document will be withheld. This delay is already unreasonable, and NARA cannot justifiably extend it.

The contents of then-Vice President Biden's pseudonymous emails are a time-sensitive matter of intense public interest.[3] Had NARA timely complied with FOIA's

---

[3] The subject "has continued to be a matter of intense interest among the public, legislators, other policymakers, and journalists." *Open Soc'y Just. Initiative,* 399 F. Supp. 3d at 167; *see, e.g.*, John Solomon, *Shades of Clinton: Joe Biden Used Private Email to Send Government Information to Hunter*, Just The News, July 20, 2021, https://perma.cc/LX95-TFE5; Miranda Devine, *Veep Joe Biden Skirted "No See" Mail Law With Private Accounts*, New York Post, July 23, 2021, https://perma.cc/J3KL-CMZE; Letter from Charles Grassley, Ranking Member, Senate Committee on the Judiciary, and Ron Johnson, Ranking Member, Senate Permanent Subcommittee on Investigations (July 30, 2021), https://perma.cc/GS7X-SMS3; Steven Nelson, *House GOP Demands Unredacted Records of Biden Using Pseudonym While VP*, New York Post, Aug. 17, 2023, https://perma.cc/HE3Z-FLGC; David Rufful, *Bombshell: Biden's Alias 'Robert L. Peters' Received an Email that CC'd Hunter About Ukraine*, American Insider, Aug. 24, 2023, https://perma.cc/7BKL-427P; Brian Bennett, *Here's What We Know About the Email Aliases Joe Biden Used While Vice President*, Time, Aug. 31, 2023, https://perma.cc/4ZA5-6VRK; Sarah Bedford, *National Archives Finds More than 5,000 Emails Including Biden's Secret Email Addresses*, Washington Examiner, Aug. 28, 2023, https://perma.cc/JK24-TM23; Victor Nava, *National Archives Has 5,400 Biden Emails in Which He Uses Fake Names to Dish Government Info to Hunter,*

clear directive, this suit would not have been necessary, and the public would have been timely informed and free to reach its own conclusions about President Biden's use of these accounts. Further delays by NARA that push processing and production of the records many years into the future—well into 2026—will deteriorate the public value of the records.

This is not "prompt availability" in any sense. FOIA authorizes this Court to prevent abuse of the statute and a "heightened commitment" of resources is appropriate given the high value of the request to the public. *Open Soc'y Just. Initiative*, 399 F. Supp. 3d at 167. Sunlight is the best disinfectant—it can clear away the swirling questions surrounding then-Vice President Biden's use of these email accounts.

**C.    The Court should order production of at least 1,000 PPM.**

This Court has the authority to oversee and supervise the agency's progress in responding to a FOIA request. *See CREW*, 711 F.3d at 189 ("[T]he court (if suit has

---

*Others as VP: Suit*, New York Post, Aug. 28, 2023, https://perma.cc/JA6S-4LGK; C.J. Ciaramella, *Joe Biden's Email Aliases Are a Potentially Serious Transparency Problem*, Reason, Aug. 30, 2023, https://perma.cc/588C-KDPE; The Editorial Board, *Biden's Secret Emails: President robinware456*, Wall Street Journal, Aug. 30, 2023, https://perma.cc/FN5V-FX2Y; Darragh Roche, *Joe Biden's Pseudonym Emails—What We Know as 82,000 Pages Unearthed*, Newsweek, Oct. 31, 2023, https://perma.cc/4TZT-8T3D; John Solomon, *Comer Says Congress Has Only Gotten 14 Pages of Joe Biden's Pseudonym Emails, Alleges Obstruction*, Just the News, Oct. 31, 2023, https://perma.cc/BWC7-CAAP.

been filed) will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request."); *Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) ("A court therefore may use its equitable powers to require the agency to process documents according to a court-imposed timeline."); *EPIC II*, 416 F. Supp. 2d at 37–38 (explaining FOIA "envisions the courts playing an important role in guaranteeing that agencies comply with its terms"). In devising a remedy, it is important to be "mindful that 'unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses.'" *Seavey*, 266 F. Supp. 3d at 245 (quoting *Clemente*, 71 F. Supp. 3d at 269).

Courts often order processing at rates of 1,000 PPM or greater. *See id*. at 248 (2,850 PPM); *Open Soc'y Just. Initiative*, 399 F. Supp. 3d at 168–69 (rejecting 3,000 PPM and ordering 5,000 PPM, despite burdens on agencies); *Clemente*, 71 F. Supp. 3d at 269 (5,000 PPM); *Washington*, 2022 U.S. Dist. LEXIS 48691, at *17, Doc. No. 14 at 4 & n.1 (ordering processing of 3,500 records—as much as 17,500 pages by NARA's estimate—within 21 days); *Boundaoui v. FBI*, No. 17-4782, 2020 U.S. Dist. LEXIS 174663, at *3, *23 & n.5 (N.D. Ill. Sept. 23, 2020) (reducing originally ordered 3,500 PPM rate down to 1,000 PPM only because FBI's FOIA department was "operating at only a third of its typical staffing because of COVID-19"); *Elec. Privacy Info. Ctr. v. Dep't of Just.*, No. 5-845, 2005 U.S. Dist. LEXIS 40318, at *5

(D.D.C. Nov. 13, 2005) (3,000 PPM); *ACLU*, 339 F. Supp. 2d at 503–05 (17,000 PPM); *Jud. Watch, Inc. v. Dep't of Energy*, 191 F. Supp. 2d 138, 140–41 (D.D.C. 2002) (7,500 PPM); *NRDC v. Dep't of Energy*, 191 F. Supp. 2d 41, 43 & n.5 (D.D.C. 2002) (7,500 PPM).

NARA itself has voluntarily adopted processing rates over 1,000 PPM in other cases. *See Cato Inst. v. NARA*, No. 22-1746, Doc. No. 8 at 1–2 (Sept. 16, 2022), Doc. 9 at 2 (Nov. 15, 2022) (D.D.C.) (1,125 PPM); *Am. Oversight v. NARA*, No. 221529, Doc. 1 at ¶ 7, Doc. 12 at 1–2 (Mar. 21, 2023) (D.D.C.) (1,600 PPM); *Heritage Found. v. NARA*, No. 22-2671, Doc. 1 at ¶ 37, Doc. 18 at 1–2 (Dec. 5, 2023) (D.D.C.) (1,600 PPM); *Am. First Legal v. NARA*, No. 22-2713, Doc. 1 at ¶ 13, Doc. 18 at ¶ 2 (Nov. 20, 2023) (D.D.C.) (at least 1,250 PPM). Notably, NARA agreed to the higher rates in three cases—*American Oversight*, *Heritage Foundation*, and *America First Legal*—for FOIA requests submitted *after* SLF's Request.[4]

NARA's cited cases do not justify its contention that courts "frequently accept a 500 page-per-month processing rate even when it means that it may take the agency 'multiple years,' even '*decades*,' 'to produce responsive records.'" (Doc. 12 at 19–20.) In most of the cases NARA cites, the processing rate was never at issue. *See*

---

[4] NARA observes that SLF did not pursue an administrative appeal of NARA's denial of expedited processing. (Doc. 12 at 20.) But it is NARA's duty to promptly respond. NARA cannot fault SLF for not subjecting itself to further delays on NARA's timetable with an administrative appeal that is not required when NARA is so unresponsive.

*Ctr. for Immigr. Studies v. U.S. Citizenship & Immigr. Servs.*, 628 F. Supp. 3d 266, 269, 273–74 (D.D.C. 2022) (discussing overbreadth of the request, not processing rate); *Negly v. U.S. Dep't of Just.*, 305 F. Supp. 3d 36, 46–47 (D.D.C. 2018) (noting plaintiff "never challenged" FBI's 500 PPM policy); *Physicians Comm. for Responsible Med. v. U.S. Dep't of Agric.*, 316 F. Supp. 3d 1, 3 (D.D.C. 2018) (containing no argument about rate because processing had been completed).

In the remaining cases, courts approved the rate because there was no urgency or public interest in more prompt disclosure. *See White v. Exec. Off. of U.S. Attys.*, 444 F. Supp. 3d 930, 943–44 (S.D. Ill. 2020) (declining to expedite production for a serial requester who made 57 dubious requests that "amount to a fishing expedition designed to uncover information about those whom he believes have wronged him"); *Freedom Watch v. Bureau of Land Mgmt.*, 325 F. Supp. 3d 139, 140 (D.D.C. 2018) (declining to expedite FOIA request being used instead of discovery in a pending criminal prosecution where plaintiff "did not provide any 'objective evidence' in support of its otherwise unsubstantiated objections" or make any "proposals . . . to expedite the production of responsive materials (e.g., by limiting the scope of its requests)").

Fewer than 1,000 PPM is unreasonable and robs the public of timely disclosure about information relevant to the American people right now. The "sluggish compliance" of a mere six-month delay required a court to order 5,000

PPM to "reinforce[] the need for meaningful" timely production in *Open Soc'y Justice Initiative*. 399 F. Supp. 3d at 169. Here, NARA failed to process even a single page of SLF's Request for sixteen months. And NARA also failed to clear out even a single request ahead of SLF's from its complex queue. *See* (Docs. 1-6, 1-8.) More than four more months have elapsed since SLF filed the lawsuit. NARA appears to have been awaiting litigation before complying with FOIA, which is improper. *See, e.g.*, *Jud. Watch*, 895 F.3d at 780–81 (noting DHS's "use of a lawsuit as an organizing tool for prioritizing responses" was contrary to FOIA's purpose and in violation of the statute). And NARA can provide no compelling reason for the lengthy delay.

A processing rate of 1,000 PPM is exceptionally accommodating. It is respectfully requested that this Court order a rate of production of at least 1,000 PPM, commensurate with the public's need for the information, the timeline of SLF's request to date, and NARA's degree of compliance until now.

### D.   NARA fails to justify its ongoing delays.

Administrative headaches do not excuse an agency's obligation to make records promptly available under FOIA. *See Seavey*, 266 F. Supp. 3d at 246; *Open Soc'y Just. Initiative*, 399 F. Supp. 3d at 169 ("Weighing DoD's duties to effect prompt disclosure under FOIA against its legitimate administrative constraints, the Court finds that a 5,000-page-per-month processing rate remains 'practicable' for FOIA purposes . . . ."). NARA must adapt its internal workings to comply with the

statute "even if meeting this demand calls upon [NARA] to augment, temporarily or permanently, its review resources, human and/or technological." *Open Soc'y Just. Initiative*, 399 F. Supp. 3d at 169; *see also Jud. Watch*, 895 F.3d at 775 ("Congress contemplated meaningful agency engagement upon receipt of a FOIA request. . . . This engagement is premised on agencies improving records management systems to enable 'prompt' responses."). Despite its burdens, FOIA's requirements ensure that the guarantee of prompt transparency does "not become a dead letter." *Jud. Watch*, 895 F.3d at 775.

Whether the logistical difficulties prompt disclosure may entail are outweighed by the benefits conveyed is a decision for Congress to make—and "Congress made that decision." *CREW*, 711 F.3d at 190. If NARA feels overburdened, "it may so inform Congress and seek new legislation." *Id.* (citing and quoting in a parenthetical *Milner v. Dep't of the Navy*, 562 U.S. 562, 581 (2011) ("All we hold today is that Congress has not enacted the FOIA exemption the Government desires. We leave to Congress, as is appropriate, the question whether it should do so.")); *see also Fiduccia*, 185 F.3d at 1041 ("So long as the Freedom of Information Act is the law, we cannot repeal it by a construction that vitiates any practical utility it may have.").[5]

---

[5] NARA is aware of this statutory obligation from other FOIA litigation. *See, e.g.*, *Washington*, 2022 U.S. Dist. LEXIS 48691, at *12 ("The Agency proposed rolling productions that would not be completed until . . . more than a year after receipt of

Just last year, a court rejected this argument by NARA that a surge in requests excused it from its duty to promptly disclose:

> Despite acknowledging the steady increase in its backlog, NARA admits that it only hired an additional part-time staff person to assist in reducing the backlog in July 2021—five months *after* receiving Washington's request and three months *after* this lawsuit was filed. . . . NARA fails to meet its burden of demonstrating "reasonable progress in reducing its backlog" and, therefore, cannot establish the delay was due to exceptional circumstances.

*Washington*, 2022 U.S. Dist. LEXIS 48691, at *13–14. Although NARA similarly complains here of an uptick in requests, *see, e.g.*, (Doc. 20 at 17), NARA's declaration is silent about any staffing changes (or any other adjustments) it has made in response. *See generally* (Doc. 12-1 at 5–7.)

Further, a reasonable agency would have expected an increase in requests for then-Vice President Biden's records long before now. Its failure to process the Request until litigation "reinforce[s] the need for a meaningful production schedule." *Open Soc'y Just. Initiative*, 399 F. Supp. 3d at 169. NARA has had ample time to make whatever internal adjustments it needed—adding full-time or part-time staff, shifting personnel, upgrading technology, or any other measure. Instead, it sat on the Request for more than a year before assigning just three archivists. (Doc. 12-1 at ¶ 18.)

---

the request. That this kind of months long delay could result in summary judgment should be no surprise to the Agency.").

SLF respectfully submits that NARA's proposal of 600 PPM is unwarranted and defeats FOIA's purposes.

## II.    Requiring interim *Vaughn* indexes is both reasonable and necessary.

*Vaughn* indexes help balance the competing interests of public transparency and withholding exempt documents. *Vaughn* indexes allow a reviewing court "to make a rational decision whether the withheld material must be produced without actually viewing the documents themselves . . . ." *King v. Dept. of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987). Because FOIA places "overwhelming emphasis upon disclosure," the government must provide a *Vaughn* index that includes a "detailed justification" for any withholdings or redactions. *Vaughn v. Rosen*, 484 F.2d 820, 823, 826 (D.C. Cir. 1973). This ensures that "a more adequate adversary testing will be produced." *Id.* at 828. It is often a "necessary aspect of FOIA litigation because, in the typical case, only the agency knows the exact nature of the documents being withheld. The party seeking to obtain documents usually can only speculate on their contents." *Brown v. FBI*, 658 F.2d 71, 73–74 (2d Cir. 1981).

"A court may also order expedited compilation and production of a *Vaughn* index." *Brennan Ctr. for Just. at N.Y. Univ. Sch. of Law v. U.S. Dep't of State*, 300 F. Supp. 3d 540, 547 (S.D.N.Y. 2018). Despite NARA's insistence that "[i]t is well established" that the government need not present a *Vaughn* index until summary judgment, (Doc. 12 at 21), there is, in fact, no such rule—*see, e.g.*, *Keeper*

*of the Mts. Found. v. U.S. Dep't of Just.*, No. 6-98, 2006 U.S. Dist. LEXIS 39915, at *6 (S.D. W. Va. June 14, 2006) (rejecting argument that "the standard practice" is to await filing of a dispositive motion because "there is no consensus"); *Cal. ex rel. Brown v. U.S. EPA*, No. 08-735 SC, 2008 U.S. Dist. LEXIS 62528, at *9 (N.D. Cal. Aug. 1, 2008) ("It appears that there is no actual rule in this regard . . . .")—and "other courts have not followed this procedure." *Providence J. Co. v. U.S. Dep't of the Army*, 769 F. Supp. 67, 68 (D.R.I. 1991) (citing cases).

Courts can, and often do, order the production of a *Vaughn* index well prior to summary judgment. In *Villanueva*, the district court ordered the FBI to process 5,125 PPM with a *Vaughn* index accompanying every monthly production. 2021 U.S. Dist. LEXIS 237920, at *9. This Court should do the same considering the importance of transparency to the public. Many other courts have likewise ordered *Vaughn* indexes before production is complete and without regard to summary judgment motions. *See, e.g.*, *Keeper of the Mts. Found.*, 2006 U.S. Dist. LEXIS 39915, at *6–9 (finding more compelling cases in which periodic *Vaughn* indices were ordered as they are "more efficient and fair" and "may facilitate a narrowing of the issues and a reduction in the number of documents as to which there is a bona fide dispute"); *Knight Pub. Co. v. U.S. Dep't of Just.*, 608 F. Supp. 747, 751 (W.D.N.C. 1984) (ordering preparation of a *Vaughn* index three months after suit was served); *Ferguson v. FBI*, 729 F. Supp. 1009, 1012 (S.D.N.Y. 1990) (dividing

FOIA request into three time periods and ordering *Vaughn* index for the first period before records from two other time periods were processed).

While NARA is correct that sometimes courts decline to order a *Vaughn* index until summary judgment, (Doc. 12 at 23–24), that tends to occur in instances where responsive records are unlikely to grow stale or for other case-specific reasons. *See Watkins Motor Lines, Inc. v. U.S. EEOC*, No. 05-1065, 2005 U.S. Dist. LEXIS 58367, at *1–4, 6 (M.D. Fla. Nov. 29, 2005) (noting that an "agency typically does not have to produce a *Vaughn* Index when it relies on [the exemption for records compiled for law enforcement purposes]"); *Cohen v. FBI*, 831 F. Supp. 850, 852, 855 (S.D. Fla. 1993) (denying request for *Vaughn* index where FOIA request was for stale records of investigation conducted 10 years earlier).

This case is more like those where a court has ordered a *Vaughn* index prior to dispositive motions. NARA has already unreasonably delayed production. *See Cal. ex rel. Brown*, 2008 U.S. Dist. LEXIS 62528, at *9 (ordering production of a *Vaughn* index "given the amount of time that has passed between the original FOIA request and the instant motion, as well as the purpose of the index . . . ."). Further delay will deprive the information of its value. *See id.* NARA will also know which records in each batch the President contends are subject to a constitutional privilege. Any claim of privilege will recur in many, if not all, monthly batches throughout NARA's production. Allowing those issues to be litigated early, before the

documents become stale, is "more efficient and fair." *See Keeper of the Mts. Found.*, 2006 U.S. Dist. LEXIS 39915, at *8–9. It will reduce or eliminate the need for supplemental production many months from now after production is complete. *See Villanueva*, 2021 U.S. Dist. LEXIS 237920, at *9; *Keeper of the Mts. Found.*, 2006 U.S. Dist. LEXIS 39915, at *6–9; *Providence J. Co.*, 769 F. Supp. at 68; *Knight Pub. Co.*, 608 F. Supp. at 751; *Ettlinger v. FBI*, 596 F. Supp. 867, 879 (D. Mass. 1984).

NARA cites *Natural Resources Defense Council v. United States Department of Defense*, 388 F. Supp. 2d 1086, 1109 (C.D. Cal. 2005), for the proposition that "[p]roducing a properly detailed *Vaughn* Index is a 'considerable burden.'" (Doc. 12 at 23.) But mere administrative inconvenience does not excuse FOIA's requirements. And that same decision also recognized that *the government* inflicts that burden on itself by opting to withhold the documents at all. *NRDC*, 388 F. Supp. 2d at 1109. The same is true here. NARA can simply disclose the documents which, after all, were deliberately contained by then-Vice President Biden in pseudonymous email accounts that cannot, and should not, be shielded from public scrutiny. NARA cannot insist that Americans wait years to find out if it has withheld any documents that, by that point in time, will have lost much of their public relevance.

SLF respectfully requests that this Court order NARA to provide *Vaughn* indices contemporaneous with any production or on some periodic basis.

## CONCLUSION

For all these reasons, the Court should order NARA to (a) process at least

1,000 PPM and (b) provide interim *Vaughn* indexes with its production.

Respectfully submitted this 9th day of January, 2024.

Southeastern Legal Foundation

By:    /s/ *Kimberly S. Hermann*
       Kimberly S. Hermann
       Georgia Bar No. 646473
       Braden H. Boucek
       Georgia Bar No. 396831
       Tennessee Bar No. 021399
       David J. Myers
       Georgia Bar No. 533072
       Idaho Bar No. 6528
       Southeastern Legal Foundation
       560 W. Crossville Road, Suite 104
       Roswell, Georgia 30075
       (770) 977-2131
       (770) 977-2134 (Fax)


       *Attorneys for Plaintiff*

## **CERTIFICATION**

Under LR 7.1(D), Counsel hereby certifies that this Brief has been prepared

with one of the font and point selections approved by the Court in LR 5.1(B).

## **CERTIFICATE OF SERVICE**

The undersigned served this document today by filing it using the Court's

CM/ECF system, which automatically notifies the parties below and counsel of

record:

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
MARCIA BERMAN
Assistant Branch Director
KYLA M. SNOW
Ohio Bar No. 96662
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Email: kyla.snow@usdoj.gov
Phone: (202) 514-3259


January 9, 2024

/s/ *Kimberly S. Hermann*
Kimberly S. Hermann