IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SOUTHEASTERN LEGAL ) <br> FOUNDATION, INC., ) <br> ) <br>    Plaintiff, ) <br> ) <br> v. ) <br> ) <br> NATIONAL ARCHIVES AND ) <br> RECORDS ADMINISTRATION, ) <br> ) <br> ) <br>    Defendant. ) | CIVIL ACTION <br><br> FILE NO. 1:23-cv-03819-LLM |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS JOINT STATUS REPORT POSITION**

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). "FOIA was enacted to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Batton v. Evers*, 598 F.3d 169, 175 (5th Cir. 2010) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). NARA seeks to re-write—or ignore—the plain terms of FOIA. But Congress's unambiguous command to make government records "promptly available" in no way requires the Court to defer to NARA's assessment of how taxing it would be to meet its obligation. No one disputes that this Court can order

NARA to process at 1,000 PPM or greater, or to provide periodic *Vaughn* indexes. NARA's longstanding, years-deep backlog is not an excuse to drag out its response—especially to a long pending, time-sensitive request. Rather than explaining that it has complied or will comply with this clear congressional mandate, NARA argues that it—not Congress—should be allowed to define its obligations under FOIA. The Court should order full and prompt compliance with FOIA.

## ARGUMENT

### I.  This Court should order production at a rate not less than 1,000 PPM.

#### A.  FOIA requires prompt availability, and NARA's rate of 600 PPM is non-compliant.

NARA seeks to make FOIA compliance turn on its own internal concerns, specifically (1) its capacity (which is within its own control) and (2) its internally set priorities for "managing its caseload." NARA's Brief (Doc. 15 at 2.) And it seeks to make this briefing turn on the question that it prefers—whether SLF's request qualifies for expedited processing—rather than the question before this Court: whether NARA's long delays fail to meet FOIA's requirement that "each agency, upon any request for records . . . *shall* make the records *promptly available*." 5 U.S.C. § 552(a)(3)(A) (emphasis added). Prompt availability means "within days or a few weeks of a 'determination,' *not months or years.*" *Citizens for Resp. and Ethics in Wash. v. Fed. Election Comm'n (CREW)*, 711 F.3d 180, 188 (D.C. Cir. 2013)

2

(Kavanaugh, J.)[1] (emphasis added). NARA does not deny that processing will take at least four years under its 600 PPM rate (not counting further proceedings after its initial production). That is not prompt availability.

SLF has argued solely that NARA's production violates FOIA's prompt availability command. ((*See, e.g.*, Doc. 14 at 5) ("FOIA protects the right to public transparency by requiring prompt availability of responsive documents."); *see also id*. at 8 (stating 19 months "is not prompt"); *id.* at 9 ("NARA has not moved with promptness."); *id.* at 11 ("This is not 'prompt availability' in any sense.").) SLF has not contended that expedited processing is required and is not asking for that now, almost twenty months after its Request. NARA's obligation to make the documents promptly available is the sole issue.[2]

The history of this case demonstrates why prompt availability is the actual legal issue. NARA placed SLF's initial request deep into the complex queue. Fourteen months later, SLF's request had not budged. Without this litigation, it is unclear if, or when, NARA would have taken *any* action to process SLF's Request. NARA's brief makes not even a single reference to prompt availability, despite SLF's brief using the term "prompt" sixteen times.

---

[1] Contrary to NARA's claims, (*see* Doc. 15 at 8), *CREW*'s "within days or a few weeks" instruction applies to the time to produce records, 711 F.3d at 188–89, *not* an untimely "determination" that obviates administrative exhaustion.

[2] Because the issue is prompt availability and not expedited processing, NARA's expedited processing cases are irrelevant. (Doc. 15 at 13 n.4, 15 nn.6–7.)

NARA's processing system does not set the standard for prompt availability. *See Pub. Health & Med. Pros. for Transparency v. FDA (Pub. Health II)*, No. 22-cv-0915, 2023 U.S. Dist. LEXIS 82290, at *5 (N.D. Tex. May 9, 2023) ("[T]he number of resources an agency dedicates to such requests does not dictate the bounds of an individual's FOIA rights."). No definition of "prompt" involves a queue that remains static for more than a year with 28 requests remaining ahead of SLF's. "Instead, the Court must ensure that the fullest possible disclosure of the information sought is timely provided—as 'stale information is of little value.'" *Id.* (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)). NARA brushes whether it complied with the prompt availability requirement in favor of tilting at the windmill of expedited processing.

NARA admits that it has processed at rates exceeding 1,000 PPM in other cases but argues that those cases did not "contain an agreed processing rate or even any commitment by NARA to process documents at a particular rate each month." (Doc. 15 at 16.) It is unclear why that matters. NARA has shown that it can comply with an order for 1,000 PPM or more. Even if NARA were processing the same documents for multiple parties at the same time, it was processing—by its own statements—over 8,000 pages in five months (*American Oversight*) and over 9,000 pages in six months (*Heritage Foundation*) for an average of nearly 1,600 PPM. (*See*

4

Doc. 14 at 13.) And NARA acknowledges that, like those cases, SLF's request involves "overlapping" requests. (Doc. 15-1 ¶ 39); (Doc. 15 at 16.)

NARA dismisses in one sentence and four footnotes no fewer than eight cases that disprove its claim that 500 PPM is the national standard. (Doc. 15 at 15–16, 18 nn.8–11.) The distinctions it draws are not found in the opinions themselves, and the cases supposedly involving "factors absent here" also involved more significant factors that *are* present here. *See Clemente v. FBI*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (ordering 5,000 PPM in light of public "importance," including "allegations of corruption" and rising "public attention on the issue," along with "possibility that [requestor] may have only a limited time" in light of illness); *Seavey v. DOJ*, 266 F. Supp. 3d 241, 245–48 (D.D.C. 2017) (rejecting 500 PPM and ordering 2,850 PPM to fulfill "duty" under FOIA); *Villanueva v. DOJ*, No. 19-23452, 2021 U.S. Dist. LEXIS 237920, at *3 (S.D. Fla. Dec. 13, 2021) (holding 500 PPM "woefully inadequate" when agency produced 500 documents in 3.5 years and refused to provide a sufficient *Vaughn* index); *Elec. Privacy Info. Ctr. v. DOJ*, No. 05-845, 2005 U.S. Dist. LEXIS 40318, at *3 (D.D.C. Nov. 16, 2005) (ordering 1,500 pages every 15 days because "an incredibly small amount of pages have been released to Plaintiff"); *Open Soc'y Just. Initiative v. CIA*, 399 F. Supp. 3d 161, 169 (S.D.N.Y. 2019) (ordering 5,000 PPM after "[w]eighing DOD's duties to effect *prompt disclosure* under FOIA" and the public interest surrounding disappearance of Jamal

5

Khashoggi (emphasis added)); *ACLU v. Dep't of Def.*, 339 F. Supp. 2d 501, 504–05 (S.D.N.Y. 2004) (holding agency's one-year "glacial pace" on "matters of public interest" "subvert[s] the intent of FOIA; not addressing expedited processing separately).[3]

NARA unpersuasively dismisses *Judicial Watch v. U.S. Department of Energy*, 191 F. Supp. 2d 138 (D.D.C. 2002), and *National Resources Defense Council v. Department of Energy (NRDC)*, 191 F. Supp. 2d 41 (D.D.C. 2002), claiming they do "not address[] any of the equitable factors courts now generally consider." (Doc. 15 at 16 n.11.) NARA does not suggest that some new test abrogated these cases though; the Southern District of New York cited both favorably in 2018. *See Brennan Ctr. for Just. at N.Y. Univ. Sch. of L. v. U.S. Dep't of State*, 300 F. Supp. 3d 540, 550 (S.D.N.Y. 2018). For its part, *NRDC* was cited as recently as December 8, 2023. *See ACLU Found. of S. Cal. v. U.S. Immigr. & Customs Enf't*, No. 22-CV-04760, 2023 U.S. Dist. LEXIS 223089, at *36 (C.D. Cal. Dec. 8, 2023); *see also Public Health I*, 2022 U.S. Dist. LEXIS 5621, at *4 (ordering 55,000 PPM without considering NARA's preferred "equitable factors").

---

[3] NARA does not address *Boundaoui v. FBI* at all. No. 17-4782, 2020 U.S. Dist. LEXIS 174663, at *3, *23 & n.5 (N.D. Ill. Sept. 23, 2020) (ordering 1,000 PPM only because FBI's FOIA department was "operating at only a third of its typical staffing because of COVID-19"). 1000 PPM is hardly unprecedented. *Freedom Coal. of Drs.*, 2024 U.S. Dist. LEXIS 2581, at *40 (ordering between 4,000 and 60,000 PPM).

NARA cites *National Security Counselors v. DOJ* in support of its proposed 600 PPM rate, but the main issue in that case was the fees the FBI charged, not its processing rate. 848 F.3d 467, 469 (D.C. Cir. 2017). The case did not address whether 500 PPM met the requirement of prompt availability, and—contrary to NARA's claim—the court did not apply any "factors." (Doc. 15 at 9.) NARA errs similarly with the only other case it cites in its brief on this point. ((*See* Doc. 15 at 10) (citing *Ctr. For Immigr. Studies v. USCIS*, 628 F. Supp. 3d 266, 273 (D.D.C. 2022) (discussing the overbreadth of the request, not processing rate).)

Even as NARA appears to accept that it agreed to process at 1,250 PPM in *America First Legal*, (Doc. 15-1 ¶ 40), it tries to dismiss the case's relevancy by arguing that it involved three requests that merely totaled 1,250 PPM. That does not mean that NARA did not agree to the rate, thereby demonstrating its capability. NARA's decision to split or combine requests is irrelevant; no doubt, NARA would raise the same arguments if SLF had made 3 requests that produced the same number of documents. *See Seavey*, 266 F. Supp. 3d at 247–48 ("The Court does not believe that this kind of disparate treatment can be rationally justified.").

If an 87% upsurge in requests in 2023 strained NARA, then the decision to hire a mere two staffers falls far short of the "impressive responsiveness" that still

7

did not stop the court in *Open Society* from ordering 5,000 PPM. 399 F. Supp. 3d at 166. In any event, SLF's request preceded the 2023 surge.[4]

Nor does it matter that those cases involved NARA components other than AOD. (Doc. 15 at 17.) The inquiry focuses on a "reasonable agency's technological capacity," *Open Soc'y Just. Initiative,* 399 F. Supp. 3d at 169, not how this agency chose to break itself down into divisions. NARA can certainly pull resources from other components if it needs to. *See id.* at 166.

### B. NARA's backlog does not justify skirting the requirement of prompt availability.

Rather than attempt to show that production on a four-year timeline somehow is prompt, NARA misdirects by detailing its heavy workload. This excuse is unpersuasive. And NARA fails to show that it cannot move more swiftly.

NARA cannot use its limited resources as a shield, guarding it against the clear congressional demand for prompt availability. *See, e.g.*, *Open Soc'y Just. Initiative,* 399 F. Supp. 3d at 168–69 (holding agency's "decision to thus far deny itself the technologic capacity to speed its review cannot dictate the Court's assessment of the review pace"); *Washington v. NARA*, No. 21-cv-00565, 2022 U.S. Dist. LEXIS 48691, at *16 (W.D. Wash. Mar. 18, 2022) (rejecting NARA's workload excuses and

---

[4] And NARA had notice of SLF's request as early as October of 2021, when NARA denied SLF's initial request as barred by the PRA's five-year delay. *See* Decl. of Kimberly Hermann, Ex. 2.

noting that despite the steady increase in its backlog, NARA hired only one additional part-time staff person five months *after* the request and three months after suit was filed). If it can shield itself this way, then NARA is encouraged to keep its resources limited and its FOIA responses slow. That flies directly in the face of a congressional directive. And nowhere is responsiveness more critical than in a "matter of exceptional public importance and obvious and unusual time-sensitivity." *Open Soc'y Just. Initiative*, 399 F. Supp. 3d at 167. Courts can order processing rates that "require [the agency] either to divert resources from other FOIA requests or to mobilize additional resources." *Id.* at 166. If that means NARA must "augment, temporarily or permanently, its review resources, human and/or technological," then it must. *Id.* at 169.

The bottom line is that NARA is continuing to make the same excuses it has been making for years—before SLF's request and after—all without meaningfully changing its priorities, structure, technology, or methods, with predictable results. Even though NARA details how it staffs the Archival Operations Division, (Doc. 15-1 ¶¶ 24–28), it merely references other "components" without demonstrating that they cannot add capacity. (Doc. 15-1 ¶ 37); *see Seavey,* 266 F. Supp. 3d at 246–47 (faulting agency for failing to sufficiently detail ability to process).

Finally, NARA faults SLF for not agreeing to prioritize requests. (Doc. 15 at 14.) It is NARA that has a duty to make documents promptly available, and SLF has

9

already substantially limited its request to its priorities. (Doc. 12 at 2–6.) Once NARA produces documents under a rate that satisfies FOIA, SLF is more than willing to engage in "good faith negotiations" to "materially reduce the production timetable." *Open Soc'y Just. Initiative,* 399 F. Supp. 3d at 168. But SLF cannot do so when it has not one document to shape its refinements.

  **C.** **Nothing about the request alters NARA's obligations.**

Contrary to NARA's representation, the records have not been available since 2014. (Doc. 15 at 14) ("Plaintiff waited until June 2022 to submit a FOIA request for records from *eight years prior*.") (emphasis preserved). The Presidential Records Act shields Vice-Presidential records from FOIA requests for 5 years after the Vice President's term ends, or, in this case, until January 20, 2022. *See* 44 U.S.C. § 2204(b)(2). NARA knows this. It invoked this rule in response to SLF's earlier request in October 2021. *See* Decl. of Kimberly Hermann, Ex. 2 (records not available until 2022).

Nor, as NARA contends, does SLF believe that the information it seeks is "only valuable . . . before the presidential election." (Doc. 15 at 14.) It is true that the documents sought relate to "a matter of *intense* interest" in an election year. *Open Soc'y Just. Initiative,* 399 F. Supp. 3d at 167 (emphasis added). The more information released now, the better informed the "public, legislators, other policymakers, and journalists" will be. *Id*. But the information had value when SLF

first requested the records—before President Biden announced he was running for re-election. And they will continue to have value for years to come, including historical and legal value. Regardless, the records will certainly be *less* valuable if produced on NARA's timeline.

Paradoxically, NARA seems to suggest that 1,000 PPM is too slow to be timely. (*See* Doc. 15 at 14 n.5.) But if that's true then 600 PPM is definitely not prompt. Courts do order production at a rate high enough to make all the documents available no later than August 1. *See Freedom Coal. of Drs.*, 2024 U.S. Dist. LEXIS 2581, at *23–24 & n.28, *40–41 (ordering staged equivalent of between 4,000 and 60,000 PPM)[5]; *Pub. Health I*, 2022 U.S. Dist. LEXIS 5621, at *4 (ordering 55,000 PPM). The Court should order a processing rate of at least 1,000 PPM.

## II. Interim *Vaughn* indexes are necessary for efficient compliance with FOIA here.

NARA no longer musters the confidence to assert that it is "well established" that agencies only file a *Vaughn* index at the time of summary judgment. (*Compare* Doc. 12 at 21 *with* Doc. 15 at 19.) Indeed, courts often require them on some periodic basis. (Doc. 14 at 18–21); *see also ACLU v. Dep't of Def.*, 339 F. Supp. 2d at 504–

---

[5] The court in *Freedom Coalition of Doctors* based its ranges based on the plaintiff's estimates of the number of characters and words per page, yielding the PPM ranges above. 2024 U.S. Dist. LEXIS 2581, at *24 n.28.

05. NARA now only argues that FOIA does not provide a *right* to a *Vaughn* index.[6] (Doc. 15 at 19.) No one has said otherwise. (Doc. 14 at 19–20) (arguing courts have the *power* to order a periodic *Vaughn* index).

NARA instead leans on its "standard practice." (Doc. 15 at 20.) But it is hardly "standard" to wait years in a time sensitive case to disclose if NARA has been withholding presidential records from the public.[7] *See Keeper of the Mountains Found. v. DOJ,* No. 06-cv-98, 2006 U.S. Dist. LEXIS 39915, at *6 (S.D. W. Va. June 14, 2006) (rejecting argument that "the standard practice" is to await filing of a dispositive motion because "there is no consensus"); *see also Brennan Ctr. for Just.*, 300 F. Supp. 3d at 547; *Knight Pub. Co. v. U.S. DOJ*, 608 F. Supp. 747, 751 (W.D.N.C. 1984); *Ettlinger v. FBI*, 596 F. Supp. 867, 879 (D. Mass. 1984).

The decision in *Ferguson v. FBI,* 729 F. Supp. 1009, 1012 (S.D.N.Y. 1990), said nothing about assisting the agency "at summary judgment." (*Contra* Doc. 15 at 19.) On the contrary, the court rejected the FBI's "contentions that plaintiffs request

---

[6] The plaintiff in *Schwarz v. United States Department of the Treasury* was not seeking a *Vaughn* index in advance of summary judgment. 131 F. Supp. 2d 142, 147 (D.D.C. 2000). The court simply corrected the plaintiff's mistaken notion that the agency was required to have generated a *Vaughn* index during an administrative proceeding. *Id*.

[7] The court in *Miscavige v. IRS*, 2 F.3d 366 (11th Cir. 1993), merely held that affidavits were sufficient in lieu of a *Vaughn* index if they provided as accurate a basis for decision as would sanitized indexing, a random representative sample, *in camera* review, or oral testimony; therefore, a *Vaughn* index would not have been of help.

12

for an index for an index is premature" and ordered a *Vaughn* index before completion of production. *Ferguson*, 729 F. Supp. at 1012. *Ferguson* is anything but "inapposite," (Doc. 15 at 23), and certainly not because NARA "has not yet produced responsive documents." (Doc. 15 at 23). Within two weeks after the filing of this brief, NARA will be making its first production of responsive documents and knows what withholdings and redactions it has made. (Doc. 15-1 ¶ 19.) SLF is content to wait until then.

NARA attempts to distinguish *Villanueva*, 2021 U.S. Dist. LEXIS 237920, at *1, by arguing that the issue only arose after summary judgment. But the court there ordered that *Vaughn* indexes accompany each monthly production of belatedly processed documents in response to the defendants' motion for entry of a production schedule. *Id*. The court's ruling was not in response to any motion from plaintiff and there was no schedule for summary judgment proceedings regarding the more than 20,000 documents still to be produced. *Id*. at *8–9.

NARA misses the point when it objects to "having to draft *Vaughn* information for each and every redaction it makes in these documents, whether or not Plaintiff intends to challenge them." (Doc. 15 at 21.) SLF cannot tell NARA in advance which withholdings and redactions it will challenge, because it is the index that provides SLF with information it does not know: the *reasons* for the withholdings. *See Vaughn*

*v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973) (explaining government must provide a "detailed justification" for any withholdings or redactions).

NARA's withdrawal sheets are an inadequate substitute. (*See* Doc. 15-3.) They lack "an explanation of how disclosure would damage the interest protected" by any claimed exemption. *Cal. ex rel. Brown v. U.S. EPA*, No. 08-0735, 2008 U.S. Dist. LEXIS 62528, at *6 (N.D. Cal. Aug. 1, 2008) (quoting *Schiffer v. FBI*, 78 F.3d 1405, 1408 (9th Cir. 1996)); *id.* at *7 (quoting *King v. U.S. DOJ*, 830 F.2d 210, 223–24 (D.C. Cir. 1987) (describing how "for each withholding [the agency] must discuss the consequences of disclosing the sought-after information, and requiring "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant"). The minimal information on the withdrawal sheets does not meet this standard. *See Keeper of the Mountains Found.*, 2006 U.S. Dist. LEXIS 39915, at *3–4, *6 (holding a form response is insufficient). To the extent the withdrawal sheets contain some of the information a *Vaughn* index will contain, NARA is only demonstrating that the task of assembling a proper *Vaughn* index is partially done already.

This Court should order the preparation and production of a *Vaughn* index on a periodic basis.

14

## CONCLUSION

For these reasons, the Court should order NARA to (a) process at least 1,000 PPM and (b) provide interim *Vaughn* indexes with its production.

Dated: <u>January 30, 2024</u>.           Respectfully submitted,


                                By:   <u>/s/ B. H. Boucek</u>
                                      BRADEN H. BOUCEK
                                      Southeastern Legal Foundation
                                      560 W. Crossville Rd., Ste. 104
                                      Roswell, Georgia 30075
                                      bboucek@southeasternlegal.org
                                      (770) 977-2131
                                      (770) 977-2134 (Fax)

                                      *Attorney for Plaintiff*

## CERTIFICATION

Under LR 7.1(D), Counsel hereby certifies that this Brief has been prepared with one of the font and point selections approved by the Court in LR 5.1(B).

## CERTIFICATE OF SERVICE

The undersigned served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties below and counsel of record:

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
MARCIA BERMAN
Assistant Branch Director
KYLA M. SNOW
Ohio Bar No. 96662
Trial Attorney
U.S. Department of Justice, Civil Division
Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Email: kyla.snow@usdoj.gov
Phone: (202) 514-3259

*Counsel for Defendant*

Dated: <u>January 30, 2024</u>.

    /s/ B.H. Boucek
    BRADEN H. BOUCEK